UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:15-CR-140 |
| v. | ) | |
| | ) | |
| JOEY ALLEN SMITH, | ) | (REEVES / SHIRLEY) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case came before the Court on November 13, 2015, for a motion hearing on the Defendant's Motion to Dismiss [Doc. 13] the Indictment, which motion was filed on October 29, 2015. Assistant United States Attorney Luke McLaurin appeared on behalf of the Government. Attorneys Wesley D. Stone and Lyndsey L. Lee represented the Defendant, who was also present. Counsel presented argument on the issues. On December 7, 2015, the Defendant filed a notice [Doc. 36] of an additional exhibit, attaching a Certificate of Incarceration from the Ohio Department of Rehabilitation and Correction. After considering the exhibits,[1] briefs, arguments, and relevant case law, the Court finds that the Indictment is sufficient as a matter of law and recommends that the Defendant's Motion to Dismiss be denied.

---

[1] At the October 29 detention hearing in this case, the Defendant presented a letter dated May 16, 1997, from the Ohio Department of Rehabilitation and Correction. Defendant also filed [Doc. 20] this letter as a supplement to his motion.

1

## I. POSITIONS OF THE PARTIES

The Defendant is indicted [Doc. 1] with a single count of violating 18 U.S.C. § 922(g)(1) by being a previously convicted felon in possession of a firearm on October 4, 2015. The Defendant asks [Docs. 13 and 21] the Court to dismiss the Indictment, arguing that he is not a felon within the meaning of the statute. He contends that the statutory definition of "felon" in 18 U.S.C. § 921(a)(20) excludes individuals whose civil rights have been restored. The Defendant states that he was convicted of felony drug trafficking in Ohio on June 6, 1995. He maintains that his civil rights, including his right to possess a firearm, were restored in either of two ways: First, he states that he was issued a certificate by the Ohio Department of Rehabilitation and Correction stating that his civil rights were restored. Although neither he[2] nor the Ohio or Tennessee correctional departments still have a copy of this certificate, he argues that nothing in the 1997 letter describing the issuance of the certificate indicates that his right to possess a firearm was not included in the restoration of his civil rights. Second, he argues that his civil rights were restored upon the service of his sentence pursuant to Ohio Revised Code § 2967.16(C)(1).

The Government responds [Doc. 19] that the Defendant offers no evidentiary proof that his right to possess a firearm was restored by a certificate. Additionally, it argues that even if the Defendant's civil rights were restored by operation of law pursuant to Ohio Revised Code § 2967.16(C)(1), he is still subject to the federal firearms ban because he is prohibited from possessing firearms under a separate Ohio statute. The Government maintains that Ohio Revised Code § 2923.13 prohibits individuals convicted of drug trafficking from possessing firearms, "unless relieved from disability by operation of law or legal process[.]" Accordingly, the

---

[2] At a motion hearing on December 7, 2015, defense counsel stated that the Defendant last had the certificate on top of his refrigerator in 2006, but it was relocated during a subsequent move. The Defendant's relatives continue to seek the certificate among his papers, but it has not been found to date.

Government asserts that the Defendant's right to possess a firearm was not restored after his Ohio conviction and that he qualifies as a previously convicted felon under the federal statute.

## II.     ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury." U.S. Const. amend V.  "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1).  As a general rule, an indictment passes constitutional muster if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Landham, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting Hamling).  The instant Indictment charges the Defendant as follows:

> The Grand Jury charges that, on or about October 4, 2015, within the Eastern District of Tennessee, the defendant, JOEY ALLEN SMITH, having previously been convicted in a court of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess, in and affecting commerce, a firearm.

[Doc. 1]

The Defendant is charged with violating 18 U.S.C. § 922(g)(1), which provides

> It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
> . . . .
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

3

For purposes of this statute, "[t]he term 'crime punishable by imprisonment for a term exceeding one year' does not include—"

> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
>
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20). The Defendant argues that he is not a felon for purposes of § 922(g)(1), because he does not meet the definition in § 921(a)(20) as a matter of law. The Court examines briefly whether this is an issue that can be determined pretrial and then turns to the question of whether the Defendant is a felon under the federal statute.

### A. Propriety of Pretrial Determination

The Defendant contends that he is not a previously convicted felon for purposes of 18 U.S.C § 922(g). Typically, the question of whether the facts constitute a charged crime beyond a reasonable doubt is a matter for the jury to decide. However, here the Defendant argues that he does not meet the statutory definition of felon as a matter of law.

Federal Rule Criminal Procedure 12(b)(2) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Moreover, the Court "may make preliminary findings of fact necessary to decide

4

the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Resolution of a pretrial motion to dismiss the indictment for failure to state an offense is appropriate when the "facts surrounding the alleged offense [are] virtually undisputed and trial of the substantive charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment." Id. at 665. In Jones, the appellate court held that the district court properly decided the defendant's motion to dismiss the indictment "because [the motion] raised the legal question of whether [the statute at issue] was intended to apply to interspousal wiretaps" and the facts relating to the issue were "virtually undisputed[.]" Id.; see also United States v. Vertz, 40 F. App'x 69, 71 (6th Cir. 2002) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the [c]ourt is reviewing a question of law, not fact").

From Jones and Rule 12(b), the Court distills two requirements for addressing a motion to dismiss the indictment which alleges that the government cannot establish the offense charged as a matter of law: (1) the issue raised must be a question of law and (2) the relevant facts must be undisputed. Jones, 542 F.2d at 665. The undisputed nature of the evidence is an important predicate to a court's determination of a motion to dismiss the indictment. If the evidence relating to the issue raised by the parties is disputed, the court runs the risk of treading upon the role of the grand jury:

> When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecution must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is entitled to a judgment of acquittal. However, the prosecution's evidence is tested at trial, not in a preliminary proceeding.

5

Case 3:15-cr-00140-PLR-CCS   Document 41   Filed 12/23/15   Page 5 of 15   PageID #: 294

United States v. Short, 671 F.2d 178, 183 (1982); see also United States v. Levin, 973 F.2d 463, 472 (6th Cir. 1992) (Boyce, J., dissenting) (decrying "the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial [as being], in essence, a decision that the indictment was based on insufficient or inadequate evidence").

The Defendant raises two primary issues: (1) whether his civil rights, including his right to possess a firearm, were restored by a certificate from the Ohio Department of Rehabilitation and Correction in 1997 and (2) whether his right to carry a firearm was restored by operation of state law upon his completion of his sentence. The Court finds that the first issue, which turns upon a certificate restoring the Defendant's rights, cannot be determined pretrial because the certificate itself either no longer exists or, at least, has not been presented to the undersigned. Because the certificate cannot be presented to the Court,[3] the Defendant asks the Court to infer from the May 16, 1997 cover letter that accompanied the certificate that the certificate restored his right to carry a firearm along with his other civil rights. The Government argues that the Court cannot draw this inference because the Defendant was convicted of drug trafficking, an offense for which Ohio law prohibits the restoration of the right to carry a firearm. Accordingly, the Government argues that the Court must assume that the certificate did not restore the Defendant's right to possess a firearm because such a restoration would violate Ohio law. The one conclusion that the Court can readily draw from these opposing positions is that the contents of the certificate are in dispute. Accordingly, the Court finds that the matter of whether the certificate restored the Defendant's right to carry a firearm in Ohio cannot be determined pretrial.

---

[3] The Court questions the Government's assertion that the Defendant bears the burden of presenting the certificate. Whether the Defendant is a felon for purposes of § 922(g) is an element of the statute. Thus, the Government bears the burden of proving that the Defendant is a felon beyond a reasonable doubt at trial.

6

The Defendant's second issue, however, can be determined at this juncture. The Defendant argues that his right to carry a firearm was restored by operation of Ohio law upon his completion of his sentence. The Government does not contest the fact that the Defendant has completed his sentence for his 1995 Ohio drug trafficking conviction. Moreover, the Defendant has presented a Certificate of Incarceration [Doc. 36-1], which states that the Defendant was paroled on March 4, 1996, and released on May 5, 1997. Thus, the Court turns to the legal question of whether Ohio law restored the Defendant's right to carry a firearm.

### B. Statutory Interpretation

The Defendant contends that he is not a felon for purposes of § 922(g) because the plain language of the statutory definition of a "crime punishable by imprisonment for a term exceeding one year" excludes him. As quoted above, § 921(a)(20) provides that a "'crime punishable by imprisonment for a term exceeding one year' does not include— . . . [a]ny conviction . . . for which a person . . . has had civil rights restored . . ., unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The Defendant argues that his civil rights were restored by Ohio Revised Code § 2967.16(C)(1) upon his completion of his sentence for his Ohio conviction.

First, the Court observes that the Defendant is correct that the Court must look to Ohio law to determine whether his civil rights have been restored. Caron v. United States, 524 U.S. 308, 313 (1998) (observing that pursuant to the first sentence and the first clause of the second sentence of § 921(a)(20), the restoration of civil rights is defined by state law). Section § 921(a)(20) expressly provides that "[w]hat constitutes a conviction of ["a crime punishable by imprisonment for a term exceeding one year"] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." The parties agree that the Defendant was

7

convicted in Ohio of drug trafficking in June 1995 and was sentenced to two to fifteen years. The parties also agree that the Court looks to Ohio law to determine whether the Defendant's civil rights have been restored. Ohio Revised Code § 2967.16(C)(1) provides

> Except as provided in division (C)(2)[4] of this section, the following prisoners or person shall be restored to the rights and privileges forfeited by a conviction:
>
> (a) A prisoner who has served the entire prison term that comprises or is part of the prisoner's sentence and has not been placed under any post-release control sanctions;
>
> (b) A prisoner who has been granted a final release by the adult parole authority pursuant to division (A) or (B) of this section;
>
> (c) A person who has completed the period of a community control sanction or combination of community control sanctions, as defined in section 2929.01 of the Revised Code, that was imposed by the sentencing court.

Defendant Smith argues that § 921(a)(20), by its plain terms, excludes as felons, persons whose civil rights have been restored, unless the restoration of the rights *expressly provides* that the right to possess a firearm is not among the civil rights that were restored. He argues that Ohio Revised Code § 2967.16(C)(1) does not expressly exclude the right to possess a firearm, nor does it refer to another section of the Ohio code that limits his right to possess a firearm. Thus, he argues that, pursuant to the plain language of § 921(a)(20) and Ohio Revised Code § 2967.16(C)(1), his civil rights, including his right to possess a firearm, were restored upon his completion of his sentence.

The Defendant relies upon <u>United States v. Zellars</u>, 334 F. App'x 742 (6th Cir. 2009) (per curiam), to argue that his civil rights, including his right to possess a firearm, were restored by operation of Ohio law. In <u>Zellars</u>, the Defendant argued that his 1973 Ohio convictions for breaking and entering and burglary were not a predicate felonies for § 922(g). <u>Id.</u> at 744. The

---

[4] Ohio Revised Code § 2967.16(C)(2) deals with restoration of the right to hold a "position of honor, trust, or profit."

8

district court interpreted Ohio Revised Code § 2967.16 as being discretionary with the Ohio parole authority and that, thus, Zellars must show the certificate, which he, like the instant Defendant, no longer had, in order to prove that his rights were restored. Id. at 745. Our appellate court, however, concluded that the district court had erroneously interpreted and applied § 2967.16 because it "failed to consider the second paragraph of § 2967.16, which provides that the rights forfeited by a conviction 'shall' be restored when a prisoner has served the maximum term of his sentence or has been granted his final release by the Adult Parole Authority." Id. at 746. The Sixth Circuit reasoned that because Zellars received his final release from parole and had completed the maximum term of his sentence, § 2967.16(C)(1) provided for the mandatory and automatic restoration of his civil rights. Id. Accordingly, the court held that the restoration of Zellar's civil rights "did not depend on his obtaining a certificate of final release from the parole authority." Id. Defendant Smith argues that, likewise, he now has served his entire sentence for his 1995 conviction and has been granted final release.[5] Thus, he contends that § 2967.16(C)(1) automatically restored his civil rights.

The undersigned finds that the analysis does not end here, however. The Zellars case does not answer the question of whether the civil rights restored to the Defendant included the right to possess a firearm. In fact, the remainder of the discussion in Zellars argues against Defendant Smith's contention that the question begins and ends with § 2967.16(C)(1). In Zellars, the court observed that the government did not contest the question of whether the defendant's civil rights were automatically restored but, instead, argued that other Ohio statutes,

---

[5] The May 16, 1997 letter from the Ohio Department of Rehabilitation and Correction states that the Defendant, an Ohio parolee, was granted final release. The letter thanks the Tennessee Compact Administrator for supervising the Defendant and states that he or she may now close the file. The Certificate of Incarceration states that the Defendant was paroled on March 4, 1996, and granted final release on May 5, 1997. Thus, like Zellars, Defendant Smith has received his final release from parole.

9

§§ 2923.13 and 2923.14, restrict the restoration of some "firearms-related rights" for persons convicted of a felony offense of violence. Id. at 746. While the Sixth Circuit ultimately found that Zellar's crimes were not violent offenses under Ohio law, important to the instant analysis is the fact that the appellate court looked to *other Ohio statutes* to determine their impact upon the restoration of civil rights granted by § 2967.16(C)(1), which is precisely what the Government argues the Court must do in the instant case. See id.

The Government argues that this case is controlled by the Sixth Circuit's ruling in United States v. Cassidy, 899 F.2d 543 (6th Cir. 1990). In Cassidy, the defendant was convicted in in 1983 in Ohio of trafficking in marijuana and sentenced to over one year in prison. Id. at 544. Cassidy was released from prison in 1984 and received a "Restoration of Civil Rights" certificate from the Ohio parole board. Id. This certificate stated that it restored "'the rights and privileges forfeited by [Cassidy's] conviction; namely the right to serve on juries and to hold office of honor, trust, or profit.'" Id. Five years later, Cassidy was charged with a violation of the federal firearms prohibition in § 922(g)(1). The district court held that the Defendant's civil rights had been restored by virtue of the restoration certificate and that, because the certificate did not state that Cassidy's firearms privileges were limited, he did not meet the statutory definition of a previously convicted felon found in §921(a)(20). Id. at 545. The appellate court looked to the language of § 921(a)(20) and held

> [c]onsidering the definition as a whole, it is clear that Congress intended that courts refer to state law to determine whether an individual should be subject to federal firearms disabilities by virtue of a criminal conviction. If state law has restored civil rights to a felon, without expressly limiting the felon's firearms privileges, that felon is not subject to federal firearms disabilities.

10

Id. at 546. However, the Court observed that the question remained[6] as to whether Congress intended that the court look only to the restoration certificate to determine whether an express limit upon the defendant's firearms privileges exists. Id. Finding that this question introduced some ambiguity into the interpretation of § 921(a)(20), the Court examined the legislative history behind the Firearms Owners Protection Act (FOPA)[7] and held that a "narrow interpretation requiring that we look only to the document, if any, evidencing a restoration of rights, would frustrate the intent of Congress that we look to the whole of state law, including state law concerning a convicted felon's firearms privileges." Id. at 546-48. Thus, the court concluded that

> if a "convicted felon" has his civil rights restored by operation of state law, with or without a certificate or order documenting the event, we must look to *the whole of state law* of the state of conviction to determine whether the "convicted felon" is entitled to vote, hold public office and serve on a jury and also whether the "convicted felon" is entitled to exercise the privileges of shipping, transporting, possessing or receiving a firearm.

Id. at 549 (emphasis added). Applying its analysis to Cassidy's case, the Sixth Circuit held that although Cassidy's civil rights were restored, he met the federal statutory definition of a previously convicted felon, because "he was expressly restricted under state law from possessing

---

[6] The court also determined a second ambiguity in § 921(a)(20): What rights are included in a restoration of civil rights? Cassidy, 899 F.2d at 546. The court's review of the legislative history produced no definitive answer to this question, but it concluded that the civil rights must be more than a *di minimis* amount of civil rights, yet need not be a full restoration of all rights forfeited by a conviction. Id. at 549. The question addressed in the body of this report above is the more pertinent to the instant case.

[7] In 1986, FOPA amended § 922(g) to include a possession offense and added the definition of a "crime punishable by imprisonment for a term exceeding one year" found in § 921(a)(20). Cassidy, 899 F.2d at 544.

a firearm[.]" Id. at 550. In this regard, the court noted that Ohio Revised Code § 2923.13 prohibits persons convicted of drug trafficking from possessing a firearm.[8] Id. at 550 n.15.

In the instant case, even if Defendant Smith's civil rights, including his right to possess a firearm, were restored by operation of law under Ohio Revised Code § 2967.16, § 2923.13 restricts his right to possess a firearm because he was convicted of drug trafficking. Accordingly, the Defendant falls within the final clause of § 921(a)(20), providing that "unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The Court cannot say, as a matter of law, that the Defendant has not been convicted of a crime punishable by imprisonment for a term exceeding one year.

The Defendant argues that Cassidy's interpretation of § 921(a)(20) conflicts with the Supreme Court's holding in Caron. Caron holds that unlike the facts of whether a prior conviction is a felony and whether a defendant's civil rights have been restored, which are determined by looking to state law, the fact of whether a defendant's right to possess a firearm has been restricted, despite the restoration of other civil rights (the "unless clause" of § 921(a)(20)) is a matter of federal law. 524 U.S. at 315-16. From the above holding in Caron, the Defendant jumps to the conclusion that "it is inappropriate for a court to look beyond the vehicle of restoration and instead to the whole of state law when determining," per the unless clause, whether the defendant's right to carry a firearm has been expressly limited. [Doc. 21, p.5] However, the reason behind the Supreme Court's holding in Caron is instructive. The Supreme Court determined that to permit state law to control when the restoration of civil rights still

---

[8] The Court also observed that Cassidy had not been relieved from this state firearms disability pursuant to § 2923.14, which allows persons affected by § 2923.13 to apply for relief in his or her county court of common pleas. Cassidy, 899 F.2d at 550 n.15.

12

restricted firearms use would cause disparate results from state to state and undermine a national policy of restricting firearm possession by dangerous felons:

> While state law is the source of law for restorations of other civil rights, however, it does not follow that state law also controls the unless clause. Under the Government's approach, with which we agree, the federal policy still governs the interpretation of the unless clause. We see nothing contradictory in this analysis. Restoration of the right to vote, the right to hold office, and the right to sit on a jury turns on so many complexities and nuances that state law is the most convenient source for definition. As to the possession of weapons, however, the Federal Government has an interest in a single, national, protective policy, broader than required by state law. Petitioner's approach would undermine this protective purpose.

Id. at 316. Thus, the court in Caron determined that because Massachusetts law restricted the defendant's possession of some firearms, the federal unless clause was activated and the defendant was a felon for purposes of § 921(a)(20), even though the defendant had not possessed the type of firearm that was prohibited under Massachusetts law. Likewise, in the instant case, Ohio law prohibits persons convicted of drug trafficking crimes from possessing firearms. This prohibition triggers the unless clause in the federal statute and causes Defendant Smith to fall within the statutory definition of a previously convicted felon. Moreover, Caron also dispenses with the Defendant's argument on the rule of lenity: "As to weapons possession, the Federal Government has an interest in a single, national, protective policy, broader than required by state law. The rule of lenity does not apply here, since petitioner relies on an implausible reading of the congressional purpose." Id. at 309.

Finally, the Defendant contends that the Fifth, Seventh, Ninth, and D.C. Circuits have adopted his interpretation of § 921(a)(20), which is that the plain language of the statute requires the court to look only to the law or the certificate restoring the defendant's civil rights to determine if it expressly limits the defendant's right to possess a firearm. United States v.

13

Chenowith, 459 F.3d 635, 639-40 (5th Cir. 2006) (holding that when a defendant's civil rights are restored by certificate, the court looks only to the certificate to determine whether the possession of firearms is expressly prohibited, not to the whole of Ohio law); United States v. Bost, 87 F.3d 1333, 1336 (D.C. Cir. 1996) (concluding that the defendant's right to vote was restored by an Ohio statute and his rights to hold office and serve on a jury were restored by certificate and that neither source of restoration—statute or certificate—expressly restricted the defendant's right to possess firearms); United States v. Herron, 45 F.3d 340, 343 (9th Cir. 1995) (holding that the word "such" in § 921(a)(20) requires the Court to look to the source of the restoration of defendant's civil rights to determine whether his gun-related rights have been expressly restricted); United States v. Glaser, 14 F.3d 1213, 1218-19 (7th Cir. 1994) (looking to the plain language of the certificate to determine that it did not expressly exclude firearms). He urges this Court to do the same. While the undersigned finds this reasoning to be persuasive, the Court is bound by the precedent in this Circuit. The undersigned finds that the Sixth Circuit's decision in United States v. Cassidy is directly on point and binding in this case. Accordingly, the Court recommends that the Defendant's Motion to Dismiss the Indictment be denied.

## IV. CONCLUSION

After carefully considering the parties' filings and arguments and the relevant legal authorities, the Court finds no basis to dismiss the Indictment. For the reasons set forth herein, it is **RECOMMENDED** that Defendant's Motion to Dismiss [**Doc. 13**] be **DENIED**. [9]

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[9] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).